## GARBUTT LUMBER COMPANY *v.* CAMP *et al.*

1. A suit for land was based upon prescription under color of title and seven years possession. Certain deeds purporting to convey the land in controversy, and memoranda relating to the same, which were not admissible in evidence as muniments of title, were delivered to the plaintiffs at the time of the purchase of the land; and there was evidence tending to show that they took them, believing they were getting a genuine title to the land in controversy. *Held*, that the deeds and memoranda were admissible to show the good faith of the prescribers, and not as muniments of title.

2. There was no error in the charges given, or failures to charge, dealt. with in the 2d division of the opinion.

3. The evidence was sufficient to authorize the verdict.

·FEBRUARY 15, 1912.

Equitable petition. Before Judge Thomas. Echols superior court. June 30, 1911.

R. J. and B. F. Camp brought their suit in Echols superior court against the A. G. Garbutt Lumber Company, to restrain it from cutting and removing the timber from land lot No. 90 in the 16th district of Echols county, Ga., and for the recovery of damages. The plaintiffs claimed the title to the lot of land in controversy, and that the defendant was a wilful trespasser upon said lot and was engaged in cutting the timber therefrom for its own benefit, to the irreparable injury of the plaintiffs. They claimed title also to the timber suitable for sawmill and cross-tie purposes on the lot in controversy, and on lots numbers 94, 95, and 136 in said county and adjacent thereto; and that they and their predecessors in title acquired a complete prescriptive title to the land, by reason of more than seven years continuous and adverse possession under color of title, while engaged in working the timber for turpentine and cross-tie purposes. They relied upon a certain chain of deeds for color of title, and as showing good faith in those taking and holding under them, beginning with the plats and grants from the State of Georgia to Benjamin S. Jordan to the lots of land in controversy, dated January 2, 1842, and, the death of Jordan being shown, certified copies of deeds conveying title out of the estate of Benjamin S. Jordan, deceased, into the estate of Skelton Napier, deceased, or to John T. Napier as executor of the will of Skelton Napier; a certified copy of the will of Skelton Napier, deceased, dated April 7th, 1852, with a codicil dated March 10, 1856, under which Jane E. Napier, William P. Napier, and John T. Napier

were named executors, said will being probated in common form; a certified copy, from the ordinary's office of Bibb county, of what purported to be an agreement or deed of division between the heirs at law of Skelton Napier, deceased, dated November 10, 1866; a certified copy of a deed from Emily E. Jordan and Leonidas A. Jordan, sole heirs at law of B. S. Jordan, deceased, to John T. Napier, executor of Skelton Napier, deceased, dated February 28, 1871; letters of administration issued by the court of ordinary of Houston county, Georgia, to Frances C. Napier, as administratrix of the estate of John T. Napier, deceased, dated February 5, 1872; a certified copy of an order from the court of ordinary of Houston county, granted at the August term, 1872, authorizing Fannie C. Napier, administratrix of the estate of John T. Napier, deceased, to sell the lot of land in controversy, and other wild lands, at private sale; a deed from Mrs. Frances C. Napier, administratrix of John T. Napier, deceased, to John T. Willey, dated September 3, 1882; a deed from John T. Willey to J. B. Withers, dated June 22, 1885; a deed from J. B. Withers to S. J. Barnes, dated January 1, 1897; and a lease from S. J. Barnes and others to the plaintiffs, dated January 20, 1902, conveying the timber suitable for sawmill and cross-tie purposes on said land.

The defendant, in answer to the petition, denied that the plaintiffs purchased the timber in controversy for the purpose or with the view to using the same for sawmill or cross-tie purposes, that the plaintiffs acquired any title thereto by reason of any purchase they may have made, that the timber was worth the sum alleged ($1,000), or anything like said sum, that the profits from cutting and converting the timber into lumber and cross-ties could not be calculated and estimated, and that the plaintiffs would be entitled to the benefit of such profits, if made. Defendant admitted that it entered upon the lot of land described in the petition, during the month of January, 1907, and commenced to cut and remove the timber therefrom suitable for sawmill purposes, and denied that it did so as a wilful trespasser, without lawful claim, right, and authority; and denied further that the plaintiffs had sustained or would sustain any damages whatever by reason thereof, or that damages, if sustained, would be in their nature irreparable. The defendant further averred that it was the true and lawful owner of all the timber suitable for sawmill purposes situated, growing, and

38

being on the lot of land described in the petition. A. G. Garbutt, secretary and treasurer of the defendant company, made an affidavit that the original deed purporting to be from Emily E. Jordan and Leonidas Jordan, as sole heirs at law of Benjamin S. Jordan, deceased, to John T. Napier, as executor of the last will and testament of Skelton Napier, deceased, reciting a consideration of $5, etc., and conveying, among others, lot of land No. 90 in the 16th district of originally Irwin, now Echols county, Ga., was a forgery; and the issue of forgery was submitted, with the rest of the case, to the jury.

Under the charge of the court, the jury found the deed from Emily E. Jordan and Leonidas Jordan to John T. Napier, executor, to be a forgery, and also found in favor of the plaintiff the premises in dispute. A motion for a new trial was made by the defendant, which was overruled, and it excepted.

*J. G. Cranford, E. K. Wilcox,* and *Wilson, Bennett & Lambdin,* for plaintiff in error.

*J. L. Sweat, R. G. Tison,* and *G. A. Whitaker,* contra.

HILL, J. (After stating the foregoing facts.)

1. This is the second appearance of this case here. It will be found reported in 129 *Ga.* 411 (58 S. E. 870). The case turns largely on prescriptive title. The possession began in J. B. Withers, who held possession less than the time necessary to ripen the prescription. Then Withers made a deed to the property in controversy to S. J. Barnes, dated January 1, 1897. Barnes and others made a "timber lease" to R. J. & B. F. Camp, the plaintiffs in the court below, on January 20, 1902, conveying the timber on the land in controversy for sawmill and cross-tie purposes. Possession, under which prescription ripened, was in Barnes and the Camps. Several deeds and papers which purported to convey the title to the land, as well as an abstract of title and certain memoranda, were offered in evidence and admitted by the court over objection of defendant's counsel. Most if not all of these documents were not admissible as muniments of title, but as bearing on the subject of good faith on the part of the plaintiffs in purchasing the timber, which is one of the elements of prescription. Withers testified that the memoranda and chain of title came to him together, and that he thought he was getting a genuine title, or he would not have paid for it. Barnes testified, that certain of the

deeds and grants were delivered to him when he bought as agent for his wife; that they were not all the deeds that he received; and that he did not know anything about the originals of two other deeds mentioned, but he knew that he had bought them and they were all there when he bought. "They were with the full chain." Also, that he delivered the papers to the agent of one of the Camps. From this and other evidence it will be seen that a number of the papers introduced were before the prescribing parties at the time they purchased and relied on by them in connection therewith; and while they may have been inadmissible as tending to prove title, they were admissible as bearing on the good faith of the pre-scribers. If any of these papers were inadmissible, their admission was not of sufficient materiality to require a reversal. The presiding judge did not submit to the jury at all the question of title by chain, or otherwise than by prescription; and certainly most if not all of the papers offered were admissible in that connection as bearing on the question of good faith; and if any of them should have been rejected, their reception was not sufficiently material error to require a new trial, in the light of the charge which directed the jury to find that a certain deed attacked for forgery should be declared to be such, and confined them to the contention as to whether the plaintiffs had acquired prescriptive title.

2. It was not error for the court to charge the jury as follows: "An inchoate prescriptive title may be transferred by a possessor to a successor, so that the successive possessions may be tacked to make out the prescription." This charge of the court embodies a correct principle of law on this subject; and if a fuller charge, or an amplification of the principle to suit the facts of the case, was desired, a request therefor should have been made.

There was no error in the failure to charge the jury as contended in the 13th and 14th grounds of the amended motion for a new trial, in the absence of a request to so charge. The court had charged the jury that it took seven years continuous adverse possession to ripen into prescription, and that the possession must be "public, continuous, exclusive, uninterrupted and peaceable, and accompanied by a claim of right, and such continued for and during the term of seven years."

There was no error in the following excerpts of the court's charge,

in the absence of a request to charge more fully on the subjects excepted to: "The court instructs you further, that the working and operating of timber for turpentine purposes may amount to possession which will ripen into prescription, being dependent upon the character of the work and the continuity thereof." And, "Whether or not the cultivation of a turpentine farm upon a tract of land is such an occupancy as may be the basis of a prescriptive title to the land itself is a question of fact dependent upon the character of the possession, the extent of the visible signs of occupancy, and its continuance." The court concisely but correctly charged the jury the law bearing on the issues involved in the case; and if a fuller charge was desired by the defendant, a request should have been made therefor. While the charge was meager in some respects, we can not say that it was error.

3. It is insisted that the deeds and other papers admitted by the court in evidence on the question of the good faith of the plaintiffs were calculated to influence the jury in favor of the plaintiffs' case. No request to charge the jury on the subject of limiting the deeds to the question of good faith was made, nor complaint that the court refused to so charge the jury. If the deeds and papers were admissible, and the defendant desired a charge to the effect that the deeds and other papers admitted were solely for the purpose of showing the good faith of the plaintiffs when they bought the timber in controversy, and the jury should consider them for that purpose alone, a request to so charge should have been made. *McGruder* v. *State*, 71 *Ga.* 864 (2 *a*). While the evidence was somewhat meager on the question of possession, it was sufficient to authorize the verdict.

> *Judgment affirmed. All the Justices concur.*