24585.  POLLARD, receiver, *v.* HARRIS.

DECIDED SEPTEMBER 23, 1935.  REHEARING DENIED OCTOBER 5, 1935.

*Garland M. Jones, Beck, Goodrich & Beck,* for plaintiff in error. *Stanford Arnold,* contra.

STEPHENS, J. ■ Upon the trial of an action by a wife to recover damages for the homicide of her husband at a railroad crossing, alleged to have been caused by negligent operation of the defendant's railroad-train, a charge that if the jury believed that the husband was negligent and that his negligence was less than the negligence of the defendant, the plaintiff would "not be barred of the right of recovery, but it would be the duty of the jury to reduce the damages allowed to her in proportion to the degree of fault or negligence attributed to her husband," is not error in that it omits, in that immediate portion of the charge, the qualification that the plaintiff could not recover if her husband by the exercise of ordinary care could have avoided the consequences of the defendant's negligence, where it appears that the court had previously fully and fairly charged the last-mentioned principle of law, and thereafter had proceeded to instruct the jury fully as to what was meant by the exercise of ordinary care; and where it was after such full and complete instructions as to the inability of the plaintiff to recover in the absence of the exercise of ordinary care on the part of her husband, and as to what constituted ordinary care, that the court, not in the same sentence or in an effort to qualify the instructions thus given, but in addressing the jury anew, proceeded to give them the charge upon comparative negligence, manifestly as a separate and independent principle. It can not be expected of the court that every subject-matter, every matter of defense, can be treated in one and the same sentence and at one and the same time. *Wilson* v. *Small*, 28 *Ga. App.* 587, 592 (113 S. E. 238); *Davis* v. *Whitcomb*, 30 *Ga. App.* 497, 503 (118 S. E. 488). But even "though a particular instruction taken alone may be open to the criticism that it required a given qualification, yet where it plainly appears that elsewhere in the charge this very qualification of the doctrine laid down in such instruction was so distinctly and clearly stated as that the jury were not misled as to the true law, the giving of the instruction will not require the granting of a new trial." *City Council of Augusta* v. *Tharpe*, 113 *Ga.* 152 (2) (38 S. E. 389). It is only when two separate and independent principles of law are given in such manner as to leave the impression that one qualifies the other that a reversal is required. The vice in the charge in *Americus, Preston & Lumpkin R. Co.* v. *Luckie*, 87 *Ga.* 6 (13 S. E. 105), as subsequently explained in *Central of Ga. Ry.*

*Co.* v. *Brown,* 138 *Ga.* 107, 111 (74 S. E. 839), lay in the fact that "the presiding judge first charged the rule that .if the plaintiff by the use of ordinary care could have avoided the consequences of the defendant's negligence, she could not recover; then immediately, in the same sentence, separated only by a semicolon, and with the appearance of qualifying the rule, added: 'but if both parties are at fault, and the alleged injury was the result of the fault of both, then, notwithstanding ·the plaintiff's negligence, she would be entitled to recover, but the amount of the recovery would be abated in proportion to the amount of fault on her part.' Taking these statements together, the jury might have understood that the general rule was that the plaintiff could not recover if she could have avoided the consequences to herself of the defendant's negligence by the use of ordinary care, and failed to use it, but that this was qualified by the fact that if both were guilty of negligence she might recover the diminished amount. In other words, that she might recover the diminished amount although she was guilty of want of ordinary care and could have prevented the injury to herself by its use." The charges in the instant case were not subject to the criticism made in the *Luckie* case. Both principles as embodied in the Code were independently stated. After stating and reiterating that the plaintiff would not be permitted to recover unless her husband was himself in the exercise of ordinary care, and after defining ordinary care, the judge then proceeded to address the jury and give to them the doctrine of comparative negligence with diminished damages, manifestly as a different and independent principle of law, and manifestly not subject to the interpretation that it was a qualification of the previous charge.

■ It is not, as a matter of law, negligence proximately causing an injury for a person injured at a public railroad crossing by an approaching train, to proceed across the railroad track at the crossing without observing the approaching train, although had he looked he could have seen the train approaching in time to have avoided the injury. *Richmond & Danville Railroad Co.* v. *Howard,* 79 *Ga.* 44 (3 S. E. 426). Where, on the trial of a suit against a railroad company to recover damages for an injury received by a person upon a public railroad crossing, caused by the operation of the defendant's train, the evidence is sufficient to authorize an inference that the train was being operated negligently as respects

the safety of persons upon the crossing, notwithstanding the person injured may have gone upon the crossing ahead of the approaching train without looking and without seeing the train, and could have seen it had he looked, the inference is not demanded, as a matter of law, that the injury was proximately caused by the negligence of the person injured, but the evidence was sufficient to authorize the inference that the injury was proximately caused by the negligence of the defendant, or by the negligence of both by an application of the rule of comparative negligence. The court did not err in overruling the motion to grant a nonsuit, and in overruling the motion for new trial. ·

*Judgment affirmed. Jenkins, P. J., and Sutton, J., concur. Stephens, J., dissents.*

STEPHENS, J. Paragraph 1 expresses the opinion of my two colleagues. Upon the trial of a suit by a wife against a railroad company, to recover damages for the homicide of her husband at a railroad crossing, alleged to have been caused by the negligent operation of the defendant's train at the crossing, where the court charged the jury that if the husband could have avoided the consequences to himself of the defendant's negligence the plaintiff could not recover, and immediately following charged that whether he could have avoided the consequences of the defendant's negligence and whether such negligence existed was a question for the jury, and defined ordinary care to be what every prudent man would have done under the same or similar circumstances, and stated if the plaintiff's husband could have avoided the consequences of the defendant's negligence the plaintiff could not recover, that if the plaintiff's husband could not have avoided the consequences of the defendant's negligence the plaintiff would not be barred of the right of recovery if the right otherwise existed, that if the jury should believe that the defendant had violated the law which had been read to the jury (the statute placing duties upon those operating railroad trains in approaching a crossing) that would amount in law to negligence per se, and charged immediately thereafter that if the jury believed that the plaintiff's husband and the servants of the railroad company were both negligent and that the negligence of the plaintiff's husband was less than the negligence of the railroad company, the plaintiff would not be "barred of the right of recovery, but it would be the duty of the jury to re-

duce the damages allowed to her in proportion to the degree of fault or negligence attributed to her husband," the rule that the plaintiff could not recover if her husband by the exercise of ordinary care could have avoided the consequences to himself of the defendant's negligence, on an application of the principle laid down in *Americus &c. Railroad Co.* v. *Luckie,* 87 *Ga.* 6 (13 S. E. 105), notwithstanding the intervening matter respecting what constituted ordinary care and the duty resting upon the jury to determine what constituted negligence, was modified by the instruction that if the plaintiff's husband was less negligent than the defendant railroad company the plaintiff would not be barred of a recovery, but it would be the duty of the jury to reduce the damages. The last part of the charge was error in that the court omitted therefrom the qualification that the plaintiff could not recover if her husband by the exercise of ordinary care could have avoided the consequences of the defendant's negligence. This is not a case where a general rule authorizing a recovery against a railroad company where both parties were at fault was qualified by a statement afterwards of a particular instance in which a recovery can not be had, and which is not error, as was held in *Central of Georgia Railway Co.* v. *Brown,* 138 *Ga.* 107 (3) (74 S. E. 839) ; but it is a case in which the reverse is true. In the case cited these two propositions of law were charged in the reverse order from that in the case now before the court. The court charged first "the general rule of comparative negligence, that there might be a recovery in case both the plaintiff and the railroad company were at fault, with diminution of damages in proportion to the amount of default, and then instructed the jury that if the plaintiff's fault amounted to a want of ordinary care by the use of which he could have avoided the consequences to himself of the defendant's negligence, there could be no recovery. . . One states a general rule authorizing recovery against a railroad company where both parties are at fault; the other states a particular instance in which a recovery can not be had."

I dissent from paragraph 1, and concur in paragraph 2. I am of the opinion that the court erred in not granting a new trial.

### ON MOTION FOR REHEARING.

The plaintiff in error has moved for a rehearing upon the ground that this court overlooked what is claimed to be undisputed and

uncontradicted evidence that the deceased, before he got upon the railroad track, looked toward the train and saw it and then started across the track as if he intended to "beat" the train. Whether or not there is evidence to this effect, it is certainly not undisputed and uncontradicted. The testimony of one of the witnesses referred to in the motion for rehearing was as to facts from which it was inferable that the deceased did not see the train before he went upon the track, and it is not conclusive from this testimony that the deceased saw the train before he got on the track and tried to beat the train. This witness further testified as follows: "What did I see Mr. Harris do? He did not do nothing but came on down the street and come on across the railroad. He didn't get across. He was coming on across there. I was on this side of railroad, I seed him coming. I waved my hand for him to go back. Just as he got on the railroad, he made a frightened fast step to get across. After he got there, he put his left leg over the track and it hit his right leg and throwed him up against the platform. . . . When he made the fast frightened step, he was just about middle ways of the main track. He got his left leg across and it hit his right leg and throwed him up against the platform. I saw the train after it struck Mr. Harris. . . It [the track] is absolutely straight for about a mile and a half. Mr. Harris could see it for a mile or a mile and half. From the time he reached the crossing he could see that train for a mile. I knew the train was coming, and I knew Mr. Harris was coming on the track. I tried to wave him back and keep him from coming. He just kept on coming. The train hit him before he could get out of the way. Hit him right after he stepped on the railroad track. And he saw the train coming. Well—I made a statement in this case, I signed a paper for Mr. Slapback. I saw Mr. Harris as he came up on the railroad and then tried to beat the train across. After he looked down the railroad track, the train was right on him then, and when he looked down and saw the train coming, he tried to beat it across. That train was so near Mr. Harris when he went up on that railroad, it was impossible for the train to keep from hitting him." Any statement in the testimony of any of the witnesses that the deceased before he got upon the railroad track, saw the train approaching, must necessarily be a conclusion of the witness. It is unthinkable, unless the deceased had intended to commit suicide,

and there is no evidence as to this, that he deliberately walked in front of the approaching train when it was right upon him and he saw it coming. From the fact that he proceeded upon the railroad track in front of the moving train, and the fact that one of the witnesses who saw him undertook to warn him of the approaching train, it is clearly inferable that, notwithstanding he may have looked in the direction from which the train was coming, that he did not in fact see the train. The evidence therefore is not conclusive that the deceased with knowledge that the train was approaching started across the track in front of the train in an effort to "beat" the train. The motion for rehearing is denied.