27212. SOUTHERN RAILWAY COMPANY *et al.* v.
ALEXANDER.

DECIDED MARCH 31, 1939.

*Davis & Stephens, Wheeler & Kenyon, S. J. Smith Jr.,* for plaintiff in error.

*E. C. Stark,* contra.

STEPHENS, P. J.. Nelle Alexander, by her next friend, brought suit for damages for personal injuries against Southern Railway Company, H. M. Hammett, and John Mann. The petition alleged joint and concurrent negligence on the part of the defendants, causing damage to the plaintiff in the sum of $25,000; that in the afternoon of June 6, 1937, the plaintiff was driving an automobile along a public highway where it crossed a track of the railway company, and was run over at the crossing by a train of the railway company which was being operated by Hammett, the engineer, and Mann, the fireman; that approaching the track from the direction in which the plaintiff was traveling, the highway runs through a deep cut, with the right-hand bank of a depth of from four to eight feet, which roadway cut extends to where said highway meets the banks of a cut through which the railway track is laid, then the highway turns south through a cut with the banks approximately four feet in height for a distance of approximately 150 feet

854

to a point where the highway crosses the track; that a person approaching the line of railway in the direction in which the plaintiff was traveling could not, until he was practically on the crossing, see a train approaching the crossing from the north, but that the engineer and fireman on the engine could, due to the elevation of the position occupied by them, see an automobile approaching the crossing for some distance; that, approaching the crossing along the track from the north, there is a long decline of approximately one mile, which flattens out and becomes level about 150 yards from the crossing; that the engine was not giving off any smoke sufficient to be seen, nor, while the train was coasting at an extremely high speed down said long down grade as it approached the crossing, was it making enough noise to be heard by any one approaching the crossing; that the track runs through a deep cut for a distance of several hundred yards on the east side of the track, and on the bank of this cut there were large bushes and small trees which further excluded any view of an approaching train by any person approaching the crossing from the direction in which the plaintiff was driving; that as the plaintiff approached the track, she looked in both directions up and down the track, and listened, and neither seeing nor hearing the approaching train, nor seeing any smoke from the train, drove upon the crossing, and then saw the train as it came out of the cut running at a dangerous rate of speed; that the train knocked the automobile in which the plaintiff was riding a distance of approximately sixty feet; that the moment she saw she was in a position of danger she put on the gas, but the automobile did not get entirely clear of the track, and was run against by the train, and she was seriously and permanently injured.

The petition further alleged that, at the time, the plaintiff was eighteen years of age, a well-developed normal girl; that she could and did perform all the duties usually required of a girl of her age, and was capable of earning at least one dollar per day; that the value of her services would have increased to at least $50 per month or other large sum; that since she received the injuries she has not been able to do any work, nor will she ever be able to do the work performed by her before she was injured; that her earning capacity has been reduced at least fifty per cent.; that after she had observed the usual caution, on approaching the crossing,

by looking and listening, she observed immediately in front of her another automobile going in the same direction that she was driving, and observed that the driver of the other automobile also looked up and down the track but continued to approach and cross the track; that she, at the time, was some fifty feet behind the other automobile; that the train was running late and the engineer was operating the train at a dangerous speed as it approached the crossing, but the engineer gave no warning either by bell or whistle of the approach of the train to the crossing, and was guilty of negligence in failing to blow the whistle at a blow post 400 yards from the crossing as required by statute, and failed while approaching the crossing to keep and maintain a constant and vigilant outlook along the track, and failed, after discovering the presence of the automobile on or near the crossing, to blow any alarm or other whistle or to toll the bell of the engine, and failed to check the speed of the train as ordinary care required, and did not put on the brakes until after he struck the automobile; that the engineer was negligently running his train over the crossing, and upon approaching the crossing at the negligent and reckless speed of fifty-five to sixty miles per hour, which was a failure to exercise ordinary care and diligence; that the fireman negligently failed to keep any lookout ahead, and even after discovering the presence of the automobile upon and near the track failed to warn the engineer or to take any other steps, as ordinary care required, to avoid injury to the automobile and the plaintiff; that the defendants were further negligent in not keeping a lookout ahead, due to tall weeds, bushes, and small trees growing upon the bank of the cut and further obstructing the view of persons approaching the crossing; that the railway company through its employees to wit, Hammett, the engineer, and Mann, the fireman, was negligent in not blowing the whistle on the engine, beginning at the blow post 400 yards from the crossing, in operating the train at a high and dangerous rate of speed, in failing to keep a constant and vigilant lookout ahead of the train as it approached the crossing, in failing to slacken the speed of the train as it approached the crossing, and in failing to give warning by whistle or bell after the presence of the plaintiff was discovered to be near or on said crossing. The allegations in the petition as to the pain and suffering and permanent injuries of the plaintiff need not be stated.

In the exceptions pendente lite it appears that the defendants demurred to paragraph 17 of the petition, which alleged that the engineer was running the train over the crossing, and upon approaching it and upon emerging from the cut, at the negligent and reckless speed of fifty-five to sixty miles per hour, and that this was a failure to exercise ordinary care and diligence. The court overruled this demurrer, and the defendants excepted.

The defendants answered jointly, denying that any of them was guilty of any negligence or that they caused any injuries to the plaintiff, and alleging that the plaintiff drove her automobile on the railroad track immediately in front of one of the defendants' trains under circumstances that made it impossible for the train to stop before striking the automobile; that the wreck thus caused was due to the gross negligence of the plaintiff herself in driving upon the railroad track immediately in front of an oncoming train without looking or listening to see if any train was coming; that, at the place in question, any one approaching the railroad crossing could have seen the train approaching by merely looking, and could have heard the train approaching by listening; that the plaintiff's injuries were caused by her own gross negligence in failing to exercise ordinary care, and that she could have avoided the injuries to herself by the exercise of ordinary care.

The jury rendered a verdict for $5000 in favor of the plaintiff.

The defendants made a motion for new trial, and when it was presented to the court a controversy arose between the parties as to the truth of the seventh ground. After hearing some evidence the court refused to approve this ground, and this ruling is excepted to and assigned as error in the main bill of exceptions. The court overruled the motion for new trial and the defendants excepted, assigning error on the judgment overruling the demurrer, on the refusal of the court to approve the seventh ground of the motion for new trial, and on the judgment overruling the motion for a new trial.

■ The demurrer to paragraph 17 of the petition asserted that the facts alleged therein did not constitute negligence, and that the allegation of negligence was a mere conclusion. Whether the high speed of a train at a public crossing constitutes negligence depends largely on physical characteristics at the place in question, and is a matter for the jury to determine under the evidence.

There were other allegations in the petition descriptive of the dangerous character of this crossing which should be considered in connection with the allegation that the speed of the train was negligent and reckless. In view of these it was not error to overrule the special demurrer.

■ During the trial, and in the presence of the jury, the defendants' counsel requested the court to allow the jury to view the crossing in question. The plaintiff's counsel objected and the court refused the defendants' request. During the argument to the jury by one of defendants' counsel he asked why wasn't plaintiff's counsel willing for the jury to view the place where the accident happened? This was objected to by the plaintiff's counsel and the court held that the argument was improper and instructed the jury to disregard it. This ruling is complained of in ground 8 of the motion for new trial. As the matter of allowing the jury to view the premises was within the discretion of the court the plaintiff had the right to object to it, and it was not proper for opposing counsel to comment on such objection with the view of having the jury draw an inference unfavorable to the plaintiff. The evidence showed that after the occurrence in question certain bushes, shrubs, or small trees had been cleared off the right of way near the crossing by the defendant, which possibly may have affected the view of the track by a person about to cross.

■ Grounds 13 and 14 of the motion for new trial have reference to the instruction of the court as to the amount to be allowed for the diminution of the plaintiff's earning capacity. It is complained that these instructions did not limit the jury in fixing the amount to be awarded for loss of time, and gave no rule by which the jury could arrive at the amount of the plaintiff's probable earnings. There is no fixed rule to guide the jury in estimating such damages. It is not necessary for the plaintiff to introduce mathematical tables, but the jury may use their own method of calculating. The court charged the jury that the amount found for a diminution in earning capacity should be reduced to the present cash value on the basis of seven per cent. Whether or not the court erred, in the absence of a special request, in failing to instruct the jury that in arriving at the present cash value of the amount representing diminution of earning capacity the jury could consider that it rarely happens that a person labors every

day until death, or receives throughout life a fixed and regular income for his labor, and that one's capacity to earn money does not remain undiminished throughout life but diminishes with the approach of old age, it would have been proper for the court so to charge. See *Central of Georgia Ry. Co.* v. *Hill*, 21 *Ga. App.* 231, 235 (94 S. E. 50); *Western & Atlantic Railroad* v. *Roberts*, 144 *Ga.* 250 (8) (86 S. E. 933); *Furney* v. *Tower*, 34 *Ga. App.* 739, 742 (131 S. E. 177); *Central of Georgia Ry. Co.* v. *Ray*, 129 *Ga.* 349 (2) (58 S. E. 844); *Merchants & Miners Transportation Co.* v. *Corcoran*, 4 *Ga. App.* 654 (6) (62 S. E. 130); *Florida Central &c. Railroad* v. *Burney*, 98 *Ga.* 1, 10 (26 S. E. 730); *Western & Atlantic Railroad Co.* v. *Moore*, 94 *Ga.* 457 (20 S. E. 640); *Central Railroad & Banking Co.* v. *Dottenheim*, 92 *Ga.* 425 (3) (17 S. E. 662); *Western & Atlantic Railroad Co.* v. *Davis*, 139 *Ga.* 493 (5) (77 S. E. 576).

■ It is essential to the plaintiff's right to recover on the ground of the negligence of the defendants that the negligence of the defendants should be the proximate cause of the plaintiff's injury, and not that it is a mere contributing cause of the injury. In *Brown* v. *Atlanta*, 66 *Ga.* 71, 75, the following statement was approved: "It must further appear that the negligence caused the injury or injuries; not that it contributed to injury or injuries mainly arising from other causes. The defendant's negligence must be the chief cause, the preponderating, controlling cause, before it could be the subject of a recovery." See also *Gaskins* v. *Atlanta*, 73 *Ga.* 746; *Queen* v. *Patent Scaffolding Co.*, 46 *Ga. App.* 364 (167 S. E. 789). Where both the negligence of the plaintiff and the negligence of the defendants proximately cause the plaintiff's injuries there can be no recovery by the plaintiff unless the negligence of the defendants proximately contributing to the injury is greater than the negligence of the plaintiff. Where the negligence of the plaintiff is the proximate cause of the injury and the negligence of the defendants does not proximately contribute to the injury, the plaintiff can not recover in any amount whatsoever. Where the court in this case charged the jury that if the jury should find "there was negligence on the part of both parties, the plaintiff and the defendants, but the negligence of the defendants exceeded that of the plaintiff, your finding would be in favor of the plaintiff, but you would reduce your finding so as to equal the

difference as you may find in the acts of negligence in the case," and where the court also charged the jury that "if the plaintiff was guilty of negligence, still if you believe the defendants, that is the railway company and the individual defendants, or either of the individual defendants, were guilty of some or all of the negligence charged in the petition, and that such negligence of the defendants contributed to the injuries and damages complained of, then you should still find for the plaintiff a verdict for damages in this case," the charges amounted to an instruction that the jury would be authorized to find for the plaintiff, notwithstanding the negligence of the defendants may not have been the proximate cause of the plaintiff's injuries.

■ A charge by the court that a "failure to exercise ordinary care on the part of the person injured and damaged before the negligence complained of is apparent, or should have been reasonably apprehended, will not preclude, that is cut off, a recovery of damages, but would authorize the jury to diminish the damages in proportion to the fault attributable to the person injured or damaged," is equivalent to a charge that the negligence of the plaintiff occurring before the negligence of the defendant is apparent, or should have been reasonably apprehended, will not preclude a recovery by the plaintiff, but authorizes the jury to diminish the damages in proportion to the default attributable to the plaintiff. The charge was equivalent to an instruction, that, notwithstanding the negligence of the plaintiff which might have proximately caused her injuries, the plaintiff might nevertheless, if the defendants were negligent, recover damages in a diminished amount in proportion to the fault attributable to the plaintiff. If the plaintiff's negligence was the proximate cause of the injury she could not recover in any amount notwithstanding the defendants might have been negligent. The charge therefore was error in that it authorized a recovery by the plaintiff, irrespective of whether the plaintiff's negligence was the proximate cause of the injury or was greater than the negligence of the defendants.

■ These errors in the charge were not removed or rendered harmless because the court may elsewhere in the charge have instructed the jury that the plaintiff would be entitled to recover if the negligence of the defendants, or either of them, was the proximate cause of the plaintiff's injuries, and that the plaintiff

could not recover if the injuries were caused by her own negligence, or if by the exercise of ordinary care she could have avoided the consequences to herself caused by the defendants' negligence; and that if the negligence of the plaintiff equalled or exceeded the negligence of the defendants the plaintiff could not recover, and that if the negligence of the defendants exceeded that of the plaintiff the jury could find for the plaintiff but would reduce the finding in proportion to the fault attributable to the plaintiff. "The jury can not be expected to select one part of a charge to the exclusion of another, nor to decide between conflicts therein, nor to determine whether one part cures a previous error, without having their attention specially called thereto, and being instructed accordingly." *Morrison* v. *Dickey*, 119 *Ga.* 698 (2) (46 S. E. 863). The court nowhere instructed the jury as to which was the correct rule, and nowhere instructed the jury to disregard the erroneous charges referred to.

■ Notwithstanding there may be negligence by the plaintiff, the negligence of the defendants may be the proximate cause of the plaintiff's injuries. The charge was not error on the ground that it withdrew from the consideration of the jury the negligence of the plaintiff as the proximate cause of the plaintiff's injuries, or that the plaintiff could have avoided the injury by the exercise of ordinary care, where the court charged the jury that if they should find that both the engineer and the fireman were negligent in some or all of the particulars described in the petition, in the operation of the engine of the defendant railroad company, and that such negligence was the proximate cause of the injuries and damages complained of, then the railroad company, the engineer, and the fireman would be liable.

■ It is insisted by counsel for the defendants, the plaintiffs in error, that under the plaintiff's own testimony it appears that her own negligence was the cause of her injuries. Counsel rely on the following taken from the plaintiff's testimony: "I was about thirty feet from the crossing when I looked . . and did not look for the train any more. At any time within that thirty feet if I had looked and seen the train coming I could have stopped my car almost instantly. . . Once is the only time I looked. . . If I had looked again during that thirty feet I could have stopped my car almost instantly . . and the wreck would not have oc-

curred if I had stopped off the track. . . If I had looked during that thirty feet and had stopped my car I could have prevented the accident." It is contended that under the undisputed testimony of the plaintiff she could· have seen the approaching train had she looked before driving upon the track, and that therefore· she was guilty of negligence causing her own injury in going upon the track without looking. It has been repeatedly held that there is no stop, look, and listen law in Georgia applicable at a public crossing over a railroad track. *Richmond & Danville Railroad Co.* v. *Howard,* 79 *Ga.* 44 (2) (3 S. E. 426) ; *Bryson* v. *Southern Railway Co.,* 3 *Ga. App.* 407 (3) (59 S. E. 1124) ; *Seaboard Air-Line Railway Co.* v. *Sarman,* 38 *Ga. App.* 637 (2) (144 S. E. 810) ; *Hadaway* v. *Southern Railway Co.,* 41 *Ga. App.* 669 (154 S. E. 296) ; *Pollard* v. *Harris,* 51 *Ga. App.* 898 (2) (181 S. E. 593). See authorities collected in *Coleman* v. *Western & Atlantic Railroad,* 48 *Ga. App.* 343, 348 (172 S. E. 577). In *Southern Railway Co.* v. *Blake,* 101 *Ga.* 217 (29 S. E. 288), in which it was held that the plaintiff, who was injured at a public crossing by a train, was barred by his own negligence in going upon the crossing, it appears that the plaintiff had seen the train approaching and miscalculated the time in which he could safely cross, and placed himself on the track imme-'diately in front of the train. It does not appear as a matter of law that the plaintiff was barred by her own negligence. The evidence was sufficient to authorize a finding that the defendants were negligent in some manner as alleged in the petition. The evidence did not, as a matter of law, demand a finding for the defendants. There is therefore no merit in the general grounds of the motion for new trial that the verdict found for the plaintiff was without evidence to support it.

■ As the judgment is reversed, it is not necessary to pass on the assignments of error which relate to the excessiveness of the verdict, newly discovered evidence, and to the refusal of the court to approve the ground of the motion for new trial with reference to a statement made by the plaintiff's counsel. Nor is it necessary to pass on the ground of the motion for new trial which excepts to the refusal of the court to permit the defendant to introduce a certain witness who had remained in the court-room during the trial after the court had ordered a sequestration of the witnesses, except so far as to hold that the witness was not incompetent to testify

862

solely by reason of the fact that he had remained in the court-room and heard the testimony. *Thomas* v. *State,* 7 *Ga. App.* 615, 618 (67 S. E. 707) ; *Phillips* v. *State,* 121 *Ga.* 358 (49 S. E. 290) ; *Mc-Whorter* v. *State,* 118 *Ga.* 55 (6) (44 S. E. 873) ; *Withrow* v. *State,* 136 *Ga.* 337, 338 (71 S. E. 139) ; *Edwards* v. *State,* 55 *Ga. App.* 187 (189 S. E. 678) ; *Hightower* v. *State,* 14 *Ga. App.* 246, 253 (80 S. E. 684) ; *Best* v. *State,* 176 *Ga.* 46 (166 S. E. 772).

 The court did not err in overruling the demurrer; but, on account of the errors in the charge as indicated in paragraphs 4 and 5 above, the court erred in overruling the defendants' motion for new trial. *Judgment reversed. Sutton and Felton, JJ., concur.*