39037. OXFORD, Commissioner v. MACON TELEGRAPH PUBLISHING COMPANY.

DECIDED OCTOBER 26, 1961—
REHEARING DENIED NOVEMBER 16, 1961.

*Eugene Cook, Attorney-General, John E. Dean, Assistant Attorney-General,* for plaintiff in error.

*Mallory C. Atkinson, Sell & Comer,* contra.

HALL, Judge. The question for decision is: What is the true measure of the corporate franchise tax imposed by Ga. L. 1951, pp. 157, 167, as amended by Ga. L. 1952, p. 371, as amended by Ga. L. 1953, p. 290, as amended by Ga. L. 1957, p. 107 (*Code Ann.* § 92-2401 et seq.) ? The act provides: "All corporations incorporated under the laws of Georgia, except those that are not organized for pecuniary gain or profit, and domesticated foreign corporations, in addition to all other taxes now required of them by law, are hereby required to pay each year an annual license or occupation tax as specified in the following scale:

| Corporations With Net Worth Including Issued Capital Stock, Paid-in Surplus and Earned Surplus | Amount of Tax |
|---|---|
| Not exceeding $10,000 | $10.00 |
| Over $10,000 and not exceeding $25,000 | 20.00 |

[etc.] . . . For the purpose of ascertaining the tax imposed,

the *net worth* of a corporation shall be presumed to be the *net worth* as disclosed on its books and as reflected on the report to be hereinafter annually filed by such corporation: Provided, however, that in the event the State Revenue Commissioner shall ascertain that the books of any corporation taxable hereunder or the return filed for any corporation reporting hereunder, as hereinafter provided, does not disclose the *true net worth of such corporation*, then in such event, the net worth of such corporation shall have such value as shall be fixed thereon by the State Revenue Commissioner from any information obtained by him from any source. The taxable period for which the tax provided in this section is imposed shall be the calendar year for taxable corporations in existence on January 1. For a corporation coming into existence during a calendar year, its first taxable period shall begin with the date of incorporation and run through December 31st of that calendar year; thereafter its taxable period shall be the calendar year as aforesaid. The taxable date shall be the first day of the taxable period, and the *net worth* which measures this tax *shall be net worth* as of the beginning of business on the taxable date. . ." (Emphasis supplied).

"In the construction of a statute the legislative intent must be determined from a consideration of it as a whole. *City of Macon v. Ga. Power Co.*, 171 Ga. 40 (3) (155 SE 34). The construction of language and words used in one part of the statute must be in the light of the legislative intent as found in the statute as a whole. In re Kilby Bank, 23 Pick. (40 Mass.) 93. Where there is an apparent conflict between different sections of the same statute, the duty of a court is to reconcile them, if possible, so as to make them consistent and harmonious with one another. *Cason v. Harn*, 161 Ga. 366 (131 SE 88). If they cannot be so reconciled the one which best conforms to the legislative intent must stand. State v. Bd. of Commrs. of Greene County, 94 Ohio St. 296 (113 NE 831). Where a particular expression in one part of a statute is not so extensive or large in its import as other expressions in the same statute, *it must yield to the larger and more extensive expression*, where the latter embodies the real intent of the legislature. *Torrance v.*

*McDougald*, 12 Ga. 526. See 2 Sutherland, Statutory Construction, 3rd ed., pp. 336, 338, §§ 4703, 4704." (Emphasis supplied). *Williams v. Bear's Den, Inc.*, 214 Ga. 240, 242 (104 SE2d 230).

While the act used the words "net worth including issued capital stock, paid-in surplus and earned surplus" in one place, it uses the words "net worth" alone in several other places; e.g., "the net worth which measures this tax shall be net worth as of the beginning of business on the taxable date." It also refers to the "true net worth of such corporation."

In construing this act as a whole, we are of the opinion that it was the intent and purpose of the legislature that the measure of this tax shall be the "true net worth" of the corporation and that the particular expression "including issued capital stock, paid-in surplus and earned surplus" following the words "net worth" in one part of the act in no way limits the meaning of the term "net worth" or "true net worth" as found in other parts of the same act. Furthermore, we are of the opinion that as to the above particular expression "the legislative intent" was "to enumerate specific objects or conditions which have come to their attention, but this enumeration" was "not intended to limit the operation of the statute to the specific objects set forth." 2 Sutherland, Statutory Construction, 3rd ed., p. 401, § 4910.

Net worth of a corporation is "the remainder after deduction of liabilities from assets." W. H. Miner, Inc. v. Pearless Equipment Co., 115 F2d 650, 655, cert. denied 312 U.S. 687 (61 SC 615, 85 LE 1125). While both the taxpayer and Commissioner agree that the term "net worth" is the difference between assets and liabilities, they disagree as to the meaning of the words "asset" and "surplus." "The word 'surplus' is a term commonly employed in corporate finance and accounting to designate an account on corporate books. . . The surplus account represents the net assets of a corporation in excess of all liabilities including its capital stock. This surplus may be 'paid-in surplus,' as where the stock is issued at a price above par. It may be 'earned surplus,' as where it was derived wholly from undistributed profits. Or it may, among other things, represent the

increase in valuation of land or other assets made upon a revaluation of the company's fixed property. See La Belle Iron Works v. United States, 256 U. S. 377, 385." Edwards v. Douglas, 269 U. S. 204, 214 (46 SC 85, 70 LE 235) ; Scott Bldg. Supply Corp. v. Mississippi State Tax Commission, 235 Miss. 22 (108 So. 2d 557) ; United North & South Development Co. v. Heath, 78 SW 2d 650 (Tex. Civ. App.). The increase in valuation is known as "revaluation surplus." Katz, Introduction to Accounting, p. 119. Since "revaluation surplus" is a part of the "net assets" or "net worth" of a corporation, we are of the opinion that it was the intent and purpose of the legislature that the same be included in the "true net worth" of the corporation as part of the measure of the corporate franchise tax imposed by Ga. L. 1951, pp. 157, 167, as amended (*Code Ann.* § 92-2401 et seq.), where such "revaluation surplus" is included in the regular balance sheets of the corporation. See American Institute of Certified Public Accountants, Accounting Research Bulletin No. 43, p. 73, Chapter 9, § B; Paton & Paton, Asset Accounting, pp. 252-253.

The briefs of counsel raise the question, what was intended by the following language in the statute: "For the purpose of ascertaining the tax hereby imposed, the net worth of a corporation shall be presumed to be the net worth as disclosed on its books and as reflected on the report to be hereinafter annually filed by such corporation . . . " Among the items the statute requires be included in its annual franchise tax return and report are:

"(f) The amount of capital stock subscribed, the amount of capital stock issued and outstanding, the amount of capital stock paid up, and the amount of surplus and dividend profits. . . .

"(h) The change or changes, if any, in the above particulars since the last annual report.

"(i) A balance sheet as of the last day of the last fiscal or calendar year, preceding the taxable date.

"(j) Such report shall be signed and sworn to before any officer authorized to administer oaths, by the president, vice president, secretary, treasurer, or general manager of the corpora-

tion, and forwarded to the State Revenue Commissioner." *Code Ann.* § 92-2402. These provisions, read in context, can only be taken to contemplate that the required "balance sheet" reflect net worth as disclosed on the corporation's books as of the prescribed date, i.e., that the two figures will be the same. The taxpayer in its brief contends that its books disclosed both net worth including unrealized appreciation and net worth not including unrealized appreciation, and hence the figure shown on both its books and its franchise tax return is the only one that conforms with the statute. The record, including the pleadings filed by the taxpayer, does not show that the taxpayer's books disclosed such dual figures for its net worth. Even if this was the case, however, the statute does not make the net worth figure selected by the taxpayer conclusive on the Commissioner. It specifically provides " . . . that in the event the State Revenue Commissioner shall ascertain that the books of any corporation taxable hereunder or the return filed for any corporation reporting hereunder, as hereinafter provided, does not disclose the true net worth of such corporation, then in such event, the net worth of such corporation shall have such value as shall be fixed thereon by the State Revenue Commissioner from any information obtained by him from any source." *Code Ann.* § 92-2401.

The opinion in *La Belle Iron Works v. United States,* 256 U. S. 377 (41 SC 528, 65 LE 998), which is cited by the taxpayer, is itself, without comment by this court, sufficient to distinguish the statute, the tax, and the circumstances there in question from those involved in this case. There the taxpayer contended that the increased value of its ore lands, which had been placed upon its books, ought to be included in invested capital—one of the factors upon which the Federal excess profits tax was calculated—as paid in or earned surplus and undivided profits. The United States Supreme Court held that the use of the term "invested capital," describing one of the elements in the computation of the tax, and other special language in the statute "distinctly negativing any allowance for appreciation in value," excluded "the idea of capitalizing (for the purposes of this tax) a mere appreciation of values over cost." The court

also recognized that, "Whether in a given case property should be carried in the capital account at market value rather than at cost may be a matter of judgment, depending upon special circumstances and the local law. But certainly Congress, in seeking a general rule, reasonably might adopt the cost basis, resting upon experience rather than anticipation." Likewise, the Georgia legislature might and did adopt a different basis, for calculating a corporation's net worth for the purposes of the Georgia corporate franchise tax, from that adopted by Congress for calculating "invested capital" for the purposes of the war time excess profits tax act.

The trial court erred in overruling the motion of the Commissioner to dismiss the affidavit of illegality.

*Judgment reversed. Felton, C. J., and Bell, J., concur.*